No. 1,747.

**HIRAM RUSH, RESPONDENT, *v.* MICHAEL CASEY, APPELLANT.**

STATUTORY CONSTRUCTION.—ACT OF CONGRESS.—LANDS CLAIMED UNDER MEXICAN GRANT.—PUBLIC LANDS.—By Section 13 of the Act of Congress of March 3, 1851, establishing the Board of Land Commissioners for the adjudicating of private land claims in the State of California, the final rejection of a claim operates, *proprio vigore*, to restore the land included therein to the mass of the public domain, without further action by the Land Department of the Government, and the same becomes subject, at once, to location, or appropriation, in any manner provided by law.

SCHOOL LAND WARRANT.—PATENT.—A patent to land obtained under the location of a school land warrant on lands reserved from entry and sale, is unauthorized by law and void.

IDEM.—If it appear that land was duly located by the State Locating Agent, for the benefit of the State, at the United States Land Office, with the consent of the Register and Receiver, and that such location appears in their official books, a sufficient consent is thereby shown to the location, on the part of the United States.

APPEAL FROM THE JUDGMENT AND FROM AN ORDER ON MOTION FOR A NEW TRIAL.—PRACTICE.—On appeal from the judgment, as well as from an order denying a new trial, the appeal from the judgment must be decided on the judgment roll alone.

IDEM.—If the express and implied findings do not warrant the judgment, the appeal from the judgment is well taken, even though the findings are not supported by the evidence.

APPEAL from the District Court of the Seventh District, Solano County.

The findings by the Court below establish the following facts in the case:

That the defendant was in possession of the premises, claiming the same adversely to the plaintiff, at the commencement of the action; that the defendant entered upon the premises, June 12, 1860, and has since that time resided thereon; that before the defendant entered he declared his intention of becoming an American citizen, and was competent to enter upon said land as a pre-emption claimant, and entered for the purpose of pre-empting the same; that on the 13th of June, 1860, the plaintiff made application to the State Locating Agent of the Stockton Land District, to purchase and locate a tract of land, including the premises in dispute; that the application and location were accepted by the State Locating Agent on the 15th of June, 1860, and that the land was located by the agent, in the name of the

State of California, at the United States Land Office at
Stockton, on the 29th of June, 1860 ; that the location was
approved by the Surveyor General of California on the 16th
of October, 1860 ; and that, on the 13th of November, 1865,
the State of California issued her patent to the plaintiff for
the land.   The Court further found, that on the 28th day of
December, 1857, the Commissioner of the General Land
Office directed the lands in the township in which the prem-
ises are situated to be withdrawn from entry and sale, and
that such suspension was not removed until 1864.

  *James L. English,* for Appellant.

  By the Act of Congress the location could be made on
any public land not reserved from sale.   The location in
this case was made in June, 1860, but the Court found that
on the 28th day of December, 1857, the Commissioner of
the General Land Office directed the lands in the township
in which the premises are situated to be withdrawn from
entry and sale, and that such suspension was not removed
until 1864.

  As this Court takes judicial cognizance of the political
agents and officers of the country, the Commissioner of the
General Land Office will be recognized as the head of that
bureau of the department of the Government having charge
of the disposition of the public lands, and his act in direct-
ing the withdrawal of the land from entry and sale is, in
contemplation of law, the act of the President and the Gov-
ernment.   (Sec. 1 of Act to re-organize the General Land
Office, 5 U. S. Stats. at Large, p. 107 ; *Wilcox* v. *Jackson*,
13 Peters, 513.)

  It appears, therefore, that the selection and location of
the land for the plaintiff was in violation of the Act of Con-
gress, because the lands were reserved from entry and sale.

  *W. S. Wells,* for Respondent.
  *Elisha Cook* and *H. F. Crane,* of Counsel.

  By an examination of the transcript, the decision of the
Luco case is shown to have been rendered by the District
Court of the United States, rejecting the claim, June 26, 1858,

and that on an appeal to the Supreme Court of the United
States the decree of the District Court was finally affirmed
in the December Term, 1859, which was a final rejection of
the Luco claim, reported in the 23d Howard U. S. Reports,
page 515, it being referred to in the transcript. (See *Luco*
v. *United States*, 1 Hoffman; L. Cases, p. 230, and 23 How-
ard, 515.)

For this reason we invoke the aid of Section 13 of the Act
of March 3d, 1861, to wit: that the claim was finally decided
to be invalid by the Supreme Court of the United States in
December, 1859, and that then, by virtue of the statute, it
became public land, and subject to location by the State of
California and this respondent under the State at the time
he located, to wit: June 13, 1860.

The land was public land of the United States from and
after that decision by virtue of the express provisions of
the law of Congress, and the Act of March 3, 1853, relevant
to any reservation, if it ever had any operation or effect as
against these State locations, ceased to have any operation
after that final decision; and the letters or orders of the
Commissioner would cease to have any effect, not being
warranted by any law of Congress or proclamation of the
President of the United States.

CROCKETT, J., delivered the opinion of the Court:

On the former hearing of this cause we held that the loca-
tion of the plaintiff's school land warrant, made on the 13th
June, 1860, and the patent issued thereon, and also the
defendant's homestead certificate, issued in 1863, were all
void, for the reason that the lands were reserved from entry
by order of the Commissioner of the General Land Office,
issued in December, 1857, and the suspension was not
removed until November 30, 1864. The lands were ordered
by the Commissioner to be reserved from sale and entry,
because they were included within a larger tract claimed by
one Luco under a title derived from the Mexican Govern-
ment, and whose claim for confirmation was then pending
before the proper tribunals of the United States. The sus-

pension was removed by the order of the Commissioner in November, 1864, on the ground that the Luco claim had been finally rejected by the Supreme Court of the United States, and there was, therefore, no longer any reason why the land should be reserved from entry and sale. In his order removing the suspension, he does not state the date of the final rejection of the Luco claim, but refers to the case as reported in 23 Howard's Reports (page 515). On reference to this case we find the claim was finally rejected at the December Term, 1859, of the Supreme Court of the United States, prior to the location of the plaintiff's school land warrant.

In our former decision of the case, at the April Term, 1869, we held the suspension to have continued in force so as to reserve the land from entry until it was removed by the order of the Commissioner of the General Land Office in November, 1864, and that consequently the locations of both the plaintiff and defendant were void, because they were made whilst the land was reserved from sale and entry. But upon further consideration we are satisfied the suspension was removed by the final rejection of the Luco claim in 1859, and that by operation of law the land became liable to entry on the rejection of that claim without any formal removal of the suspension by the Commissioner of the General Land Office.

By Section 13 of the Act of Congress of March 3, 1851, establishing the Board of Land Commissioners for the adjudication of private land claims in this State, it is provided that all lands included in claims which shall be finally decided to be invalid by the proper tribunals of the United States, shall be deemed a part of the public domain of the United States. The final rejection of the claim operated, *proprio vigore*, to restore the land to the mass of the public domain, without any further action by the Land Department of the Government. If the President or the Commissioner of the General Land Office had afterwards attempted, in express terms, to continue the suspension on the ground that the land was embraced in the Luco claim, then finally rejected, the attempt would have been abortive, as wholly

unauthorized by law. Much less, then, would the suspension continue after the rejection of the Luco claim by reason of the mere omission of the Commissioners to notify the Register and Receiver that the claim had been rejected, and that the suspension was thereby removed. The plaintiff's warrant, therefore, having been located after the suspension was removed by operation of law, and at a time when the land was subject to location and entry, no reason is perceived why the location and the patent issued thereon are not valid. But the counsel for the defendant insists that in deciding on the validity of the plaintiff's location and patent we are confined to the findings and the judgment roll, and cannot look into the evidence; that from the findings it only appears that the land was withdrawn from entry in 1857, by an order of the Commissioner of the General Land Office, and that the suspension continued until 1864; that, nothing appearing to the contrary, we must presume the action of the Land Department was valid, and that the land was therefore not subject to location in 1860.

The appeal in this case is from the judgment as well as from the order denying the defendant's motion for a new trial. The appeal from the judgment must be decided on the judgment roll alone. If the express and implied findings do not warrant the judgment the appeal from the judgment is well taken, even though the findings are not supported by the evidence. If the findings are erroneous, it is not our province, on an appeal from the judgment, to look into the evidence with a view to reform the findings, and then to enter a judgment in accordance with what we think the findings ought to have been. In doing so, this Court would undertake to weigh the evidence and usurp the functions of a trial jury, whose especial province it is to pass upon the facts. We have repeatedly decided, in cases of that character, that where the findings do not support the judgment, instead of undertaking to reform the findings by an examination of the evidence, we will reverse the judgment and remand the case for a new trial.

The findings in this case, in respect to the reservation of the land from entry and sale, are, that the Commissioner of

the General Land Office, on the 28th December, 1857, directed the lands in contest to be withdrawn from entry and sale ; and that such suspension was not removed until 1864, but no reason is stated why they were withdrawn, nor why the suspension was removed.   Nothing appearing to the contrary, we must infer the lands properly withdrawn, and that the suspension properly continued until 1864.   If the plaintiff wished to avoid being concluded by these findings on an appeal, he should have requested the Court to find all the facts in respect to the reservation of the land and the removal of the suspension.   Having chosen to abide by the findings as they are, the validity of his judgment must be tested by them.   Assuming, then, that the land was properly reserved from entry in 1857, and remained under the suspension until 1864, it is evident the location of the plaintiff's school land warrant in 1860 was unauthorized by law, and therefore void.

But the defendant further claims that he was entitled to judgment because the plaintiff failed to show that the location of his school land warrant was approved by the Land Department of the United States ; and the argument is, that the patent from the State is not of itself even *prima facie* evidence of that fact as against the defendant, who, by his homestead certificate, has connected himself with the Government, the paramount source of title.   The Court finds as a fact that the land was duly located by the State Locating Agent, for the benefit of the State, at the United States Land Office, with the consent of the Register and Receiver, and that such location appears in their official books.   This is a sufficient consent to the location on the part of the United States, and we think there was sufficient evidence to uphold this finding.   If it be conceded that the defendant, by means of his homestead certificate, occupied a *status* which enabled him to assail the plaintiff's patent, we think the proofs were sufficient to establish its regularity.

But inasmuch as the findings do not support the judgment, the cause must be remanded for a new trial, in accordance with this opinion.

Judgment reversed and new trial ordered.

By RHODES, C. J.:

I concur in the judgment, but express no opinion as to the power of the executive department of the General Government to reserve from entry the public lands of the United States.

[*Rush* v. *Copeland*, involving the same points, was decided upon the authority of *Rush* v. *Casey*.]