## KAHN v. CHERRY.

Opinion delivered October 29, 1917.

1. EASEMENTS—WALL BETWEEN ADJACENT LOTS—CONVEYANCE BY ONE OWNING BOTH LOTS.—C. owned two adjacent city lots upon which were two brick buildings; the joists supporting the roof of the building on one lot rested in the wall on the other lot, which was necessary for such support. C. first deeded the one lot to S., and later deeded the other lot to K. with covenants against encumbrances in both deeds. *Held,* by the deed to S., C. by implication, conveyed to S. an easement in the wall of the building on the lot deeded to K.

2. COVENANTS—AGAINST ENCUMBRANCES—BREACH.—Where land burdened with an easement is conveyed by warranty deed, with a covenant against encumbrances, the covenant is broken as soon as it is made.

3. COVENANTS—ENCUMBRANCES—KNOWLEDGE OF PARTIES.—Where one conveys land to another burdened with an easement or servitude which affects the physical condition of the property only, and of which easement the grantor and grantee knew at the time of the conveyance, or which was in such plain view that the parties must be presumed to have known and contracted with special reference thereto, then such easement does not constitute a breach of the general covenant of warranty against en-

cumbrances, and such cases should be treated as not coming within the general rule as to breach of covenants affecting the title.

4. COVENANTS—ENCUMBRANCES—KNOWLEDGE OF GRANTEE.—Appellee deeded a city lot to appellant, the north wall upon said lot being charged with an easement in favor of the adjacent lot; *held*, whether the grantee had knowledge of the said encumbrance at the time of the purchase, is a question for the jury.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; reversed.

*Morris M. & Louis·M. Cohn*, for appellant.

1. It was error to direct a verdict. At the date of the conveyance by Cherry to Kahn the north wall was charged with an. easement in Mrs. Stone. The proper rule is laid down in 89 Ark. 309, 316. This rule is sustained by the authorities. 10 A. & E. Enc. Law, 420; 27 N. E. 344; 25 Am. St. 421; 49 L. R. A. 417; 81 Am. St. 749; 6 Am. Rep. 300; 53 *Id*. 550; 38 Me. 429; 27 Gratt. 77; 52 Am. Rep. 271; 4 Duer. 53; 5 *Id*. 553; 55 N. Y. Supp. 806; 77 N. E. 1126; 18 *Id*. 828. The lot was granted with the appurtenances, an express grant. See 117 Ill. 643; 7 N. E. 111; 60 N. J. Eq. 589; 10 A. & E. Enc. Law, 427; 26 N. E. 766; 49 L. R: A. 417; 81 Am. St. 749; 21 N. Y. 505; 27 App. D. C. 550; 2 Hill (N. Y.) 145; 52 Atl. 786; 32 Pac. 679; 25 Col. 67; 71 Am. St. 109; 39 N. J. Eq. 396; 119 Pa. St. 390; 4 Am. St. 654.

2. A jury should have been allowed to take the case and determine whether Mrs. Stone had an easement in the north wall and to award damages. 89 Me. 470; 36 Atl. 986; 78 S. E. 378; 7 Ky. Law Rep. 766; 80 N. Y. Supp. 552.

3. And the issue as to whether Kahn's knowledge of the easement at the date of the conveyance and whether such knowledge precluded him from recovery on the warranty, would then have been before the court and a jury. See 14 Am. Dig. Cent. Ed., § § 39, 40; 6 *Id*., p. 16, § 39; 115 Tenn. 1; 88 S. W. 933; 4 L. R. A. (N. S.) 309, note; 62 N. E. 645; 30 S. E. 656; 52 N. E. 969; *Ib*. 49; 68 *Id*. 694; 75· Mo. App. 364; 35 Atl. 635; 69 L. R. A. 790; 74 Pac. 798; 32 S. E. 114; 49 *Id*. 722; 8 Ind. 171; 7 S. W. 886; 59

Atl. 1034; 64 *Id.* 326, etc.   See also 22 Ark. 277, 285; 59 *Id.* 629, 636; 99 *Id.* 260.   The judgment should be reversed.

*Clifton W. Gray,* for appellees.

1.   No eviction is shown.   19 Ark. 447; 52 *Id.* 322; 65 *Id.* 495; 7 R. C. L. 1150.

2.   There was no easement in Mrs. Stone.   Easements by implied grant must be necessary, continuous, open and apparent.   9 R. C. L. 757.

While there is a conflict among the authorities as to whether the physical condition of the property should be strictly or only reasonably so for the enjoyment of the same, the better rule is the one that holds to the strict necessity.   9 R. C. L. 754; 65 Conn. 366; 66 *Id.* 337; 126 Ga. 210; 8 L. R. A. (N. S.) 327, and note; 125 Mass. 287; 37 Am. Dec. 85; 10 Allen, 366; 150 Mass. 267; 68 Me. 173; 89 Ark. 309.

3.   If there was an easement there was no breach of covenant.   It would have been improper to have submitted this case to a jury, for if there was an easement, appellant had knowledge of it at the time he bought.   The law recognizes two kinds of encumbrances, one that affects title, the other the physical condition of the property.   32 L. R. A. (N. S.) 737; 22 Wis. 628; 6 Am. Rep. 300; 112 Pa. 315; 36 L. R. A. (N. S.) 1004.   The parties, in the absence of anything to the contrary, are presumed to have contracted with reference to the existing state and condition of the property; and if the easement be open and visible and continuous the purchaser is supposed to take the property subject to the burden.   9 R. C. L. 737.

Whether appellant had knowledge should not have been submitted to a jury, for (1) he knew he was buying the whole dividing wall, and (2) because he contended there was an easement by implied grant and is precluded from denying that the physical condition creating the easement was open and apparent.

The court was correct in giving the peremptory instruction.

*Morris M. & Louis M. Cohn,* in reply.

1.   An easement is an encumbrance, and no eviction is required. Rawle, Covenants for Title, § 79; 23 Ark. 590; 25 *Id*. 452; 33 *Id*. 640; 65 *Id*. 103; 74 *Id*. 348; 89 *Id*. 234; 84 *Id*. 415. It certainly interfered with the quiet enjoyment of the property.

2.   Knowledge does not preclude a recovery. 11 Cyc. Pl. & Pr. 1066, etc.; 98 Ark. 1; 94 U. S. 343; L. R. A. 1916-C, 164, etc.

STATEMENT OF FACTS.

On the 16th day of November, 1912, the appellees did "grant, bargain, sell and convey" unto the appellant parts of certain lots in block 5, city of Little Rock. The habendum clause was as follows: "To have and to hold the same unto the said Herman Kahn, his heirs and assigns, forever, with all the appurtenances thereunto belonging," and the deed contained this covenant: "We hereby covenant with the said Herman Kahn that we will forever warrant and defend the title to the said lands against all claims whatever."

There was a three-story building, fronting on Main street, situated on part of the property conveyed, the south wall of such building not being on the parcel of land described in the deed, but the north wall of such building was located on the land.

After his purchase Kahn concluded to erect a new building on the site, and notified one Mrs. Stone, the owner of the adjoining property on the north, of his purpose. On Mrs. Stone's property there was also a brick building, and she claimed that the joists of her building were resting on Kahn's wall, and objected to his taking it down. Mrs. Stone turned over the matter of the protection of her interests to a well known firm of lawyers in the city. Kahn investigated the matter and found that it was true that the joists of Mrs. Stone's building rested in his north wall.

One Palez occupied the store owned by Mrs. Stone. Kahn notified Palez that he was going to tear down the

wall on the south side of the property occupied by him and Palez protested. Kahn, in order to enable him to proceed, agreed with Palez to pay him $500 for his damages, and he was put also to an expense of from three to four hundred dollars in putting in a false wall to protect Palez's store while the building was being erected. Palez would not permit the contractors to enter his store, which was necessary in order to erect the new wall so that the old could be torn down.

Previous to the conveyance from Cherry to Kahn Mrs. Stone had acquired title to the lot and brick building occupied by her tenant, Palez, through mesne conveyances from Cherry, and when she purchased, the joists of her building were resting in the north wall of the building situated on the parcel of ground which Cherry afterwards sold to Kahn.

Kahn made demand upon Cherry for compensation for the damages which he claimed to have sustained, and upon Cherry's refusal to pay, appellant instituted this suit against the appellees, setting up substantially the above facts and alleging that because of the easement created in favor of the grantees of Cherry in the property conveyed by Cherry to appellant that he was damaged in the sum of $2,500, for which he prayed judgment.

The appellees answered, admitting the conveyance by warranty deed of the property to Kahn; denied that the property was subject to an easement in favor of the previous grantees of Cherry, and alleged that if the adjacent owner enjoyed the use of the wall conveyed by Cherry to Kahn in any way that said use or privilege was so apparent that same was known to Kahn and same was taken into consideration by him when he purchased the property. Denied that such privilege or use was an encumbrance; and denied any liability to Kahn on their covenant of warranty.

After the above facts, in substance, were developed the court instructed the jury as follows: "That the plaintiff can not recover in this action. In order for plaintiff to recover from the defendants for breach of

warranty, it must appear that some encumbrance existed upon the land for which the plaintiff would be entitled to damages. After looking into the matter, I have reached the conclusion that Mrs. Stone, the owner of the property adjoining Mr. Kahn's on the north, did not have an easement in the north wall of Mr. Kahn's property. You will therefore bring in a verdict for the defendants.''

Appellant duly excepted to the ruling of the court, and from a judgment in favor of the appellees has duly prosecuted this appeal.

WOOD, J., (after stating the facts). (1) The court erred in directing a verdict in favor of appellees, and in deciding that Mrs. Stone, the owner of the property adjoining on the north, did not have an easement in the north wall of the building on the lot conveyed by Cherry to Kahn. The undisputed evidence shows that L. W. Cherry at one time owned the lot which he conveyed to Kahn and also the adjacent lot north, which, at the time of the institution of this suit, was owned by Mrs. Stone, and which we will hereafter designate as the "Stone lot." Before the conveyance to Kahn, Cherry had sold the Stone lot, with the appurtenances thereunto belonging, under a warranty deed. At the time of this conveyance there was situated on the Stone lot a brick building, the joists of which rested in the north wall of the brick building on the lot sold by Cherry to Kahn, which lot, for convenience, we will hereafter designate as the "Kahn lot." The mesne conveyances from Cherry to Mrs. Stone were warranty deeds with the same habendum clause. These mesne conveyances from Cherry to Mrs. Stone vested in her the dominant estate in the Stone lot, with the appurtenances thereto, which consisted of the brick building thereon. When Cherry conveyed this lot with its appurtenances he granted everything necessary to its enjoyment, and, therefore, he, by implication, conveyed to his grantee the easement in the north wall of the building on the Kahn lot which he also at that time owned, for without such easement it would have been impossible for the

grantee of the Stone lot to enjoy the use and benefit of the premises with the appurtenances that were conveyed to him.

The rule of law is very clearly and cogently stated in *Hancock Mut. Life Ins. Co.* v. *Patterson,* 103 Ind. 582, 586, as follows:

"Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made." The same principle is announced in *Cherry* v. *Brizzolara,* 89 Ark. 309, 316.

"The principle," says the Supreme Court of New York, in *Lampman* v. *Milks,* 21 N. Y. 505, "is that where the owner of two tenements sells one of them or the owner of an entire estate sells a portion, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear at the time of the sale to belong to it, as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is created. No easement exists so long as there is a unity of ownership, because the owner of the whole may at any time rearrange the qualities of the several parts. But the moment a severance occurs, by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases; and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale." See also numerous authorities on this point cited in appellant's brief.

Therefore, when Cherry sold the Kahn lot the estate purchased by Kahn was burdened with a servitude in favor of the Stone lot, in that, one end of the joists of the building on the Stone lot rested in the north wall of the building on the Kahn lot. The use of the north wall of the building on the Kahn lot was absolutely essential to the enjoyment of the grant which Cherry had previously made of the Stone lot, with its appurtenances.

(2) The appellees contend that the judgment was right, even though the Kahn lot was subjected to an easement in favor of the Stone lot, for they urge that there was no eviction and that the easement was a physical encumbrance that was so obvious and notorious that it could not constitute a breach of covenant against encumbrances. These contentions under the evidence are not tenable.

Under section 731 of Kirby's Digest, the words "grant, bargain and sell" are an express covenant "to the grantee, his heirs and assigns, that the grantor is seized of an indefeasible estate in fee simple, free from encumbrance done or suffered from the grantor." Also, "for the quiet enjoyment thereof against the grantor, his heirs and assigns, and from the claim or demand of all other persons whatsoever, unless limited by express words in such deed."

Now Kahn could not tear down the north wall of the building on his lot, nor use it in any other manner inconsistent with the easement. He could not convey it untrammeled by this easement. The easement therefore in favor of the owner of the Stone lot was certainly an encumbrance on the Kahn lot. *Seldon* v. *Dudley E. Jones Co.*, 89 Ark. 234; *Crawford* v. *McDonald*, 84 Ark. 415; *Seldon* v. *Dudley E. Jones Co.*, 74 Ark. 348; Rawle on Covenants for Title, section 79, p. 97.

"A covenant against encumbrances in a deed is one *in presenti.* If an encumbrance exists the covenant is broken as soon as made. The breach of such covenant is single, entire and perfect in the first instance and the right of action accrues at once." *William Farrell Lumber*

*Co.* v. *Deshon,* 61 Ark. 103; *Benton County* v. *Rutherford,* 33 Ark. 640; *Brooks* v. *Moody,* 25 Ark. 452.

In order for appellant to maintain his suit against the appellees for breach of covenants in their deed it was not necessary for Kahn to prove an eviction.

The above is undoubtedly the rule that obtains in this State with reference to a breach of covenant against encumbrances that affect title. But a distinction is drawn in some jurisdictions between encumbrances that affect title and such as affect only the physical condition of the property. This court has not heretofore been called upon to recognize the distinction. It appears to us that there is a well grounded reason for the distinction, and that in order to effectuate the intention of the parties to a contract, which is always the true rule for their interpretation, such distinction should be made.

Where encumbrances that affect the title, such as leases, mortgages, liens for taxes, or other liens or claims are outstanding at the time a conveyance containing the general covenant of warranty against encumbrances is made, such covenant is broken the instant it is made. Such encumbrances affecting title may exist without the knowledge of the grantee. The very purpose of the usual general covenant against encumbrances is to protect the vendee against such encumbrances. But where there is an easement imposed upon the land which affects the physical condition, but not the title, and of which the grantor and the grantee have knowledge, or which is so open and notorious that they must be presumed to have had knowledge thereof, and to have contracted with special reference thereto, then the existence of such an easement or servitude does not constitute a breach of the general covenant of warranty against encumbrances. *Memmert* v. *McKeen,* 112 Pa. St. 315, 320; *Henry S. Ireton* v. *R. M. Thomas* 84 Kan. 70, 113 Pac. 306; *Kutz* v. *McCune,* 22 Wis. 628; *Goodman* v. *Heilig et al.,* 72 S. E. (N. C.) 866, 36 L. R. A. (N. S.) 1004; *Janes* v. *Jenkins,* 34 Md. 1; 9 R. C. L. section 4, p. 736, 737, cited in appellees' brief.

The doctrine is well expressed in the case of *Henry S. Ireton* v. *Thomas, supra,* as follows: "It is not to be presumed that a seller of land would make a conveyance of land and warrant against an encumbrance which is plainly visible upon the land and which, from its very nature, can not be removed, with the understanding that he must pay such damage as its continuance may occasion the purchaser. Neither is it to be presumed that a purchaser would make his purchase upon the assumption that the grantor was to remove the encumbrance which, under the law, known to each, the grantor has no right to remove or which is incapable of being removed. In other words, it is not to be presumed that two contracting parties would make a contract of sale and purchase of land which is broken the instant it is completed, and the only possibly remedy of which is the payment of damages by the grantor to the grantee, in effect that the grantor should immediately repay a part of the whole of the purchase price. It is more reasonable to presume that both the grantor and the grantee, in fixing the purchase price, would consider the damages necessarily and inevitably following from the continuing of the encumbrance, and contract with reference to such physical fact."

(3) We therefore conclude that where one conveys land to another burdened with an easement or servitude which affects the physical condition of the property only, and of which easement the grantor and grantee knew at the time of the conveyance, or which was in such plain view that the parties must be presumed to have known and contracted with special reference thereto, that such easement does not constitute a breach of the general covenant of warranty against encumbrances, and such cases should be treated as not coming within the general rule as to breach of covenants affecting the title. See *Geren* v. *Caldarera,* 99 Ark. 260.

(4) This brings us to a consideration of the question as to whether Kahn had knowledge of the existence of the easement or whether the easement was of such a character that he must be presumed in law to have had knowledge

thereof under the above rule.' These were questions of fact, under the evidence, for the jury to determine.

Kahn testified that he did not see any joists of Mrs. Stone that rested in the wall at the time he bought the property; that there was no way of noticing this. He did not go inside the store; he only looked at the front of Mrs. Stone's entrance. There was a wall there of about 6 or 8 inches, and he presumed that the thing went clean through; did not go in to investigate. He could not tell from examining the property on his side of the wall, and there was no way of telling from the outside of the building that her joists were in the wall. He was not permitted to state whether he would have been able to see it even upon a closer examination.

This testimony made it a question of fact for the jury as to whether Kahn had knowledge of the easement at the time of his purchase. It can not be said as a matter of law that an easement of the character of that disclosed by the evidence in this record was such that the grantee must be conclusively presumed to have had knowledge thereof. The court erred therefore in taking this question from the jury and directing a verdict in favor of the appellees. For this error the judgment is reversed and the cause will be remanded for a new trial.